## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

BRYANT C. DUNAWAY, in his official )
capacity as the District Attorney General for )
the Thirteenth Judicial District, TN and on )
behalf of all political subdivisions therein, )
including CLAY COUNTY, CITY OF )
CELINE, CUMBERLAND COUNTY, )
CITY OF CRAB ORCHARD, CITY OF )    Civil Action No. _____
CROSSVILLE, TOWN OF PLEASANT )    Judge _____
HILL, DEKALB COUNTY, TOWN OF )    Magistrate Judge _____
ALEXANDRIA, TOWN OF )
DOWELLTOWN, TOWN OF LIBERTY, )
CITY OF SMITHVILLE, OVERTON )    Removed from the Circuit Court of
COUNTY, TOWN OF LIVINGSTON, )    Cumberland County, Tennessee
PICKETT COUNTY, TOWN OF )    Case No. CC1-2018-cv-6347
BYRDSTOWN, PUTNAM COUNTY, )
CITY OF ALGOOD, TOWN OF BAXTER, )
CITY OF COOKEVILLE, TOWN OF )
MONTEREY, WHITE COUNTY, TOWN )
OF DOYLE, CITY OF SPARTA, )
    )
JENNINGS H. JONES, in his official )
capacity as the District Attorney General for )
the Sixteenth Judicial District, TN and on )
behalf of all political subdivisions therein, )
including CANNON COUNTY, TOWN OF )
AUBURNTOWN, TOWN OF )
WOODBURY, RUTHERFORD COUNTY, )
CITY OF EAGLEVILLE, CITY OF LA )
VERGNE, CITY OF MURFREESBORO, )
TOWN OF SMYRNA; )
    )
ROBERT J. CARTER, in his official )
capacity as the District Attorney General for )
the Seventeenth Judicial District, TN and on )
behalf of all political subdivisions therein, )
including BEDFORD COUNTY, TOWN )
OF BELL BUCKLE, TOWN OF )
NORMANDY, CITY OF SHELBYVILLE, )
TOWN OF WARTRACE, LINCOLN )
COUNTY, CITY OF ARDMORE, CITY )
OF FAYETTEVILLE, TOWN OF )
PETERSBURG, MARSHALL COUNTY, )
TOWN OF CHAPEL HILL, TOWN OF )

CORNERSVILLE, CITY OF                )
LEWISBURG, MOORE COUNTY, CITY        )
OF LYNCHBURG;                        )
                                     )
BRENT A. COOPER, in his official     )
capacity as the District Attorney General for )
the Twenty-Second Judicial District, TN and )
on behalf of all political subdivisions )
therein, including GILES COUNTY, CITY )
OF ELKTON, TOWN OF LYNNVILLE,        )
CITY OF MINOR HILL, CITY OF          )
PULASKI, LAWRENCE COUNTY,            )
TOWN OF ETHRIDGE, CITY OF IRON       )
CITY, CITY OF LAWRENCEBURG,          )
CITY OF LORETTO, CITY OF ST.         )
JOSEPH, MAURY COUNTY, CITY OF        )
COLUMBIA, CITY OF MOUNT              )
PLEASANT, CITY OF SPRING HILL,       )
WAYNE COUNTY, CITY OF CLIFTON,       )
CITY OF COLLINWOOD, CITY OF          )
WAYNESBORO;                          )
                                     )
LISA S. ZAVOGIANNIS, in her official )
capacity as the District Attorney General for )
the Thirty-First Judicial District, TN and on )
behalf of all political subdivisions therein, )
including VAN BUREN COUNTY, TOWN     )
OF SPENCER, WARREN COUNTY,           )
TOWN OF CENTERTOWN, CITY OF          )
MCMINNVILLE, TOWN OF MORRISON,       )
TOWN OF VIOLA;                       )
                                     )
and BABY DOE, by and through his     )
Mother;                              )
                                     )
                 Plaintiffs,         )
                                     )
          v.                         )
                                     )
PURDUE PHARMA L.P.; PURDUE           )
PHARMA INC.; THE PURDUE              )
FREDERICK COMPANY, INC.;             )
RICHARD SACKLER; MALLINCKRODT        )
LLC; ENDO HEALTH SOLUTIONS INC.;     )
ENDO PHARMACEUTICALS, INC.;          )
TEVA PHARMACEUTICALS USA, INC.;      )

DAVID FLORENCE; MARK MURPHY;  )
NATHAN PAUL HASKINS; CENTER  )
FOR ADVANCED MEDICINE, LLC;  )
LYNNVILLE FAMILY MEDICAL  )
CLINIC, LLC; MONTCLAIR HEALTH &  )
WELLNESS LLC D/B/A SPECIALTY  )
ASSOCIATES; NORTH ALABAMA PAIN  )
SERVICES, LLC;  )
AMERISOURCEBERGEN DRUG  )
CORPORATION; CARDINAL HEALTH,  )
INC.; CARDINAL HEALTH PHARMACY  )
SERVICES, LLC; CARDINAL HEALTH  )
SPECIALTY PHARMACY, LLC;  )
MCKESSON CORPORATION; CVS  )
PHARMACY, INC.; CVS HEALTH  )
CORPORATION; CAREMARKPCS  )
HEALTH; L.L.C. D/B/A CVS  )
CAREMARK; WALGREENS BOOTS  )
ALLIANCE, INC.; AND WALGREEN  )
CO., AS SUCCESSOR IN INTEREST TO  )
RITE AID CORPORATION; RITE AID  )
HDQTRS CORPORATION; AND RITE  )
AID OF TENNESSEE.  )
                              )
                Defendants.  )

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367,

Defendant McKesson Corporation ("McKesson") has removed the above-captioned action from

the Circuit Court for Cumberland County at Crossville, Tennessee, Case No. CC1-2018-cv-6347,

to the United States District Court for the Middle District of Tennessee, Northeastern Division.

As grounds for removal, McKesson states:

## I.    NATURE OF REMOVED ACTION

1.    The Plaintiffs in this action are Bryant C. Dunaway, in his official capacity as the

District Attorney General for the Thirteenth Judicial District, Tennessee, and on behalf of all

political subdivisions therein, including Clay County, City of Celine, Cumberland County, City

of Crab Orchard, City of Crossville, Town of Pleasant Hill, DeKalb County, Town of

4829-8060-5078
-8060-50

Alexandria, Town of Dowelltown, Town of Liberty, City of Smithville, Overton County, Town of Livingston, Pickett County, Town of Byrdstown, Putnam County, City of Algood, Town of Baxter, City of Cookeville, Town of Monterey, White County, Town of Doyle, and City of Sparta; Jennings H. Jones, in his official capacity as the District Attorney General for the Sixteenth Judicial District, Tennessee, and on behalf of all political subdivisions therein, including Cannon County, Town of Auburntown, Town of Woodbury, Rutherford County, City of Eagleville, City of La Vergne, City of Murfreesboro, Town of Smyrna; Robert J. Carter, in his official capacity as the District Attorney General for the Seventeenth Judicial District, Tennessee, and on behalf of all political subdivisions therein, including Bedford County, Town of Bell Buckle, Town of Normandy, City of Shelbyville, Town of Wartrace, Lincoln County, City of Ardmore, City of Fayetteville, Town of Petersburg, Marshall County, Town of Chapel Hill, Town of Cornersville, City of Lewisburg, Moore County, City of Lynchburg; Brent A. Cooper, in his official capacity as the District Attorney General for the Twenty-Second Judicial District, Tennessee and on behalf of all political subdivisions therein, including Giles County, City of Elkton, Town of Lynnville, City of Minor Hill, City of Pulaski, Lawrence County, Town of Ethridge, City of Iron City, City of Lawrenceburg, City of Loretto, City of St. Joseph, Maury County, City of Columbia, City of Mount Pleasant, City of Spring Hill, Wayne County, City of Clifton, City of Collinwood, City of Waynesboro; Lisa S. Zavogiannis, in her official capacity as the District Attorney General for the Thirty-First Judicial District, Tennessee, and on behalf of all political subdivisions therein, including Van Buren County, Town of Spencer, Warren County, Town of Centertown, City of McMinnville, Town of Morrison, Town of Viola; and Baby Doe, by and through his Mother (collectively, "Plaintiffs").

2.      On January 10, 2018, Plaintiffs filed *Bryant C. Dunaway, et al. v. Purdue Pharma L.P., et al.*, in the Circuit Court for Cumberland County at Crossville, Tennessee.  The court assigned the case Docket No. CC1-2018-CV-6347.

3.      On August 7, 2018, Plaintiffs filed a First Amended Complaint.

4.      On March 22, 2019, Plaintiffs filed a Second Amended Complaint ("SAC").

5.      The SAC asserts claims against five groups of Defendants.

6.      The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Mallinckrodt LLC; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; and Teva Pharmaceuticals USA, Inc. (collectively, the "Manufacturer Defendants").  SAC ¶¶ 26-42.

7.      The second group of defendants consists of Richard Sackler.  SAC ¶ 43.

8.      The third group of defendants consists of McKesson; AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Cardinal Health Pharmacy Services, LLC; and Cardinal Health Specialty Pharmacy, LLC (collectively, the "Distributor Defendants").  SAC ¶¶ 44-59.

9.      The fourth group of defendants consists of Mark A. Murphy; Montclair Health & Wellness LLC d/b/a Specialty Associates; North Alabama Pain Services, LLC; David Florence; Center for Advanced Medicine, LLC; Lynnville Family Medical Clinic, LLC; Nathan Paul Haskins (collectively, "Prescriber Defendants").  SAC ¶¶ 60-69.

10.     The fifth group of defendants consists of Walgreens Boots Alliance; Walgreen Co. as successor in interest to Rite Aid Corporation; Rite Aid HDQTRS Corporation; Rite Aid of Tennessee; CVS Health Corporation; CVS Pharmacy, Inc.; CaremarkPCS Health, L.L.C. d/b/a CVS Caremark; (collectively, "Retailer Defendants").  SAC ¶¶ 70-73.

11. The SAC asserts two counts against Distributor Defendants under the Tennessee Drug Dealer Liability Act. *See* SAC ¶¶ 627-82, Prayer for Relief.

12. Although Plaintiffs assert state law causes of action, Plaintiffs plead, among other things, that Distributor Defendants "recognized that they had a responsibility not to fill suspicious orders," and that "despite recognizing orders that reflected diversion, the Distributor Defendants processed and filled them anyway." SAC ¶ 10. Plaintiffs further allege that Distributor defendants "facilitated illegal drug transactions in Tennessee by submitting suspicious orders, having them filled, and stocking suspect pharmacies and dispensing physicians with opioids destined for the illegal market." SAC ¶ 291.

13. Because the duties governing reporting and shipping "suspicious" opioid orders arise, according to the Complaint, from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiffs plead that alleged violations of federal law form the basis for its claims.

14. On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017). More than 1,900 opioid-related actions are pending in the MDL, including actions originally filed in federal courts in Tennessee.

15. Defendants intend to tag this case immediately for transfer to the MDL.

16. In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and all process, pleadings, and orders served on McKesson in the state court action are attached hereto as **Exhibit 1**.

17.     Pursuant to 28 U.S.C. § 1446(d), McKesson will file a notice of filing this Notice of Removal with the Clerk of the Cumberland County Circuit Court and will serve a copy of this Notice of Removal on counsel for Plaintiffs.  The Notice of Removal to Cumberland County Circuit Court and the Notice of Removal to counsel for Plaintiffs are attached hereto as **Exhibit 2** and **Exhibit 3**, respectively.

## II.     TIMELINESS OF REMOVAL

18.     Plaintiffs served the SAC on McKesson on April 3, 2019.

19.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiffs' SAC. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

20.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."  28 U.S.C. § 1446(b)(2)(C).

21.     McKesson has not responded to the SAC in state court.

## III.    PROPRIETY OF VENUE

22.     Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## IV.     BASIS OF REMOVAL

23.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiffs' claims present substantial federal questions under the CSA, 21 U.S.C. §§ 801, *et seq.*

24.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

4829-8060-5078
-8060-50

25.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

26.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[1]

27.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

---

[1] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Breuer*, 538 U.S. at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (brackets, citations, and internal quotation marks omitted).

federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

28. As set forth below, this case meets all four requirements.[2]

29. Although Plaintiffs ostensibly plead some of their theories of recovery against Distributor Defendants as state law claims, they base the underlying theory of liability on Distributor Defendants' alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that Distributor Defendants allegedly had a duty to identify, report, and then not ship.

30. According to the Complaint, the source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See, e.g.*, SAC ¶ 305 (citing DEA guidance interpreting 21 U.S.C. § 823 as source of duty to report suspicious orders); SAC ¶ 351 (alleging that a Distributor Defendant "failed to maintain effective controls against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers in violation of the CSA and the CSA's implementing regulations, 21 C.F.R Part 1300 *et seq.*").

---

[2] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiffs' underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

4829-8060-5078
-8060-50

9

31.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice.  Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement"). *See, e.g.*, SAC ¶ 329 (alleging that a Distributor Defendant distributed prescription opioids "even though the company knew that many of the orders placed by the pharmacies were of an unusual size and were 'suspicious' as defined in the CSA"); SAC ¶ 308 (citing DEA guidance that "references the final orders issues in *Southwood Pharmaceuticals, Inc.*, 72 FR 36487 (2007)" to support alleged duties to halt suspicious orders).

32.     Plaintiffs' theories of liability against Distributor Defendants, as pled in the SAC, are predicated on allegations that Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and — crucial to Plaintiffs' claims — to refuse to ship such orders to Tennessee pharmacies.

33.     Specifically, Plaintiffs invoke federal law and plead that Distributor Defendants violated federal law with, among others, the following allegations:

    a.     "The Drug Distributors facilitated illegal drug transactions in Tennessee by submitting suspicious orders, having them filled, and stocking suspect pharmacies and dispensing physicians with opioids destined for the illegal

drug market. They had a choice when faced with suspicious orders: submit them or impound them and investigate until they actually cleared suspicion. They consistently chose to ship opioids to downstream buyers who were likely . . . diverting prescription opioids."  SAC ¶ 291.

b.     "The Drug Distributors know that they have an important responsibility to monitor their customers' practices and that they are not supposed to fill suspicious orders."  SAC ¶ 294.

c.     "The Distributor Defendants knew they should monitor, detect, and halt suspicious orders."  SAC ¶ 295.

d.     "The Distributor Defendants sold prescription opioids in and around the Counties, which Defendants knew were likely to be diverted into the illegal drug market."  SAC ¶ 296.

e.     "DEA Agent Joseph Rannazzisi has emphasized the importance of the Distributor Defendants in preventing opioid diversion [through] the closed system created by the Controlled Substances Act."  SAC ¶ 297 (quotation marks and alteration omitted).

f.     "The Distributor Defendants filled inherently suspicious orders originating from the Counties or which the Distributor Defendants knew were likely to be diverted to or within the Counties."  SAC ¶ 299.

g.     "The Distributor Defendants filled suspicious orders of unusual size, orders deviating substantially from a normal pattern and/or orders of unusual frequency in the Counties, and/or which Defendants knew or should have known were likely to be delivered and/or diverted into the

Counties." SAC ¶ 300.

h.  A September 27, 2006 letter from DEA "also provides that 'in addition to reporting all suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific, and industrial channels.'" SAC ¶ 305.

i.  A December 27, 2007, letter from DEA "also references the final orders issues in *Southwood Pharmaceuticals, Inc.*, 72 FR 36487 (2007), which 'in addition to discussion the obligation to report suspicious orders when discovered' and 'some criteria to use when determining whether an order is suspicious,' the order 'also specifically discusses your obligation to maintain effective controls against the diversion of controlled substances.'" SAC ¶ 308 (alteration omitted).

j.  A Distributor defendant "distributed hydrocodone to various pharmacies, even though the company knew that many of the orders placed by the pharmacies were of an unusual size and were 'suspicious' as defined in the CSA." SAC ¶ 329.

k.  "[T]he DEA had reason to believe that [certain Distributor Defendants] were not adhering to their obligation under the CSA." SAC ¶ 332.

l.  A Distributor Defendant "began violating the CSA" after entering a Memorandum of Agreement with DEA. SAC ¶ 335.

34.  Although Plaintiffs cite, in passing, to Tennessee state statutes and regulations that it claims govern the distribution of prescription opioids, SAC ¶ 8, Plaintiffs do not identify a

state law source for a requirement that wholesale pharmaceutical distributors report, "halt," or refuse to "fill" suspicious orders from registered pharmacies, SAC ¶¶ 294-95. Indeed, Plaintiffs cite DEA guidance to establish these duties. *See, e.g.*, SAC ¶ 305-08.[3]

35. Plaintiffs' theory of liability also relies on an expansive reading of federal law that calls into question an agency determination. Plaintiffs allege not only that Distributor Defendants should have detected and reported discrete suspicious orders by their respective individual pharmacy customers, but that Distributor Defendants should have recognized that the *total volume* of prescription opioids distributed by *all* wholesalers to various regions was suspicious or unreasonable. *See, e.g.*, SAC ¶ 298 ("The sheer volume of prescription opioids distributed to pharmacies in the Counties and/or to pharmacies from which the Distributor Defendants knew the opioids were likely to be diverted into the Counties, is excessive for the medical need of the community and facially suspicious."); SAC ¶ 301 (Distributor Defendants "knew that Tennessee pharmacies were receiving prescription opioids in volumes grossly disproportionate to the population and any conceivable medical need."); SAC ¶ 11 (Distributor Defendants "persisted in filling suspicious orders . . . at levels far exceeding any conceivable need").

---

[3] Specifically, Plaintiffs cite T.C.A. §§ 39-17-407, 53-11-302, 53-11-303, 53-11-401, and Rules of the Tennessee Board of Pharmacy, Ch. 1140-02.01, *et seq.*, and Ch. 1140-09.01, *et seq. See* SAC ¶ 8 & nn.6-7. None of these provisions establishes a duty to report or halt suspicious orders. T.C.A. § 39-17-407, for example, simply defines Schedule II drugs under Tennessee law. T.C.A. § 53-11-302 requires manufacturers, distributors, and dispensers of controlled substances to register with the state board of pharmacy. T.C.A. § 53-11-303 sets forth the factors that the state board of pharmacy considers in issuing a license. And T.C.A. § 53-11-401(a)(1) provides that it is an offense "to distribute or dispense any controlled substance for any purposes other than those authorized by and consistent with the person's professional or occupational licensure or registration law, or to distribute or dispense any controlled substance in a manner prohibited by the person's professional or occupational licensure or registration law."

36.     To succeed on that theory, Plaintiffs would thus have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was excessive or unreasonable.  However, the total amount of prescription opioids distributed in any given year turns on annual aggregate production quotas established by DEA.  Specifically, DEA must "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks."  21 C.F.R. § 1303.11(a).  In making this determination, DEA must consider "[p]rojected demand" for such substances. 21 C.F.R. § 1303.11(b)(4).  Thus, to show that the total quantity of prescription opioids that Distributor Defendants distributed was unreasonable, Plaintiffs would have to show that the annual aggregate production quotas set by DEA, pursuant to a federal statute, were themselves unreasonable.[4]

37.     The federal questions presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

38.     *First*, Plaintiffs' state law claims "necessarily raise" federal questions because "the right to relief depends upon the construction or application of federal law." *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (internal quotations and

---

[4] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every sale, delivery or other disposal" by them of prescription opioids. In other words, it has been the case for years that each Distributor Defendant has reported to DEA the total volume of prescription opioids it distributed. To succeed on its theory of liability that Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiffs would have to show that Distributor Defendants' existing reporting to DEA was inadequate.

4829-8060-5078
-8060-50

citation omitted); *see also N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

39. As pled, Plaintiffs' claims against Distributor Defendants require Plaintiffs to establish that Distributor Defendants breached duties under federal law by failing to report and stop shipments of otherwise lawful orders of controlled substances into Tennessee.

40. For example, in pleading their claims under the Tennessee Drug Dealer Liability Act, Plaintiffs allege that Distributor Defendants "had a responsibility not to procure or fill suspicious orders" and "violated these responsibilities through the various acts referenced herein." SAC ¶ 646 (Count I); SAC ¶ 673 (Count II). Plaintiffs further allege that Distributor Defendants "[r]outinely fill[ed] suspicious orders" and "[r]outinely fill[ed] orders, including plainly suspicious orders, without due diligence." SAC ¶ 649. To establish public nuisance or negligence as pled, Plaintiffs would have to show that Distributor Defendants failed to report and halt suspicious orders for prescription opioids as purportedly required *by federal law*. And, as noted, the alleged duty to halt or refuse to fill shipments of suspicious orders arises (if at all) under the federal CSA, and *not* under state law. Indeed, as Plaintiffs themselves allege, Distributor Defendants "exceeded their lawful authority by taking actions that the federal

government found were unlawful." SAC ¶ 647. Thus, although plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiffs here allege violations of federal law as the basis for their state-law claims.[5]

41.     Similarly, Plaintiffs' claims that the Distributor Defendants shipped "excessive" quantities of prescription opioids into Tennessee, SAC ¶ 298, require Plaintiffs to show that the aggregate production quotas set by DEA pursuant to a federal statute were unreasonable.

42.     In pleading their causes of action, Plaintiffs claim that Distributor Defendants "[s]hipp[ed] excessive amounts of opioids to pharmacies and dispending physicians in Tennessee at levels far exceeding any conceivable legitimate need, where the volume of pills far exceeded the number of people, and where the prescription *per capita* was exceedingly high." SAC ¶ 649(j).

43.     But as noted, the annual aggregate production quotas for prescription opioids are established by DEA under 21 C.F.R. § 1303.11. The total amount of prescription opioids distributed by pharmaceutical distributors in any given year also turns on these aggregate quotas. Accordingly, to prevail on its claims, as pleaded, Plaintiffs would need to show that DEA's aggregate production quotas, set pursuant to a federal statute, were "excessive," or "facially

---

[5] Furthermore, it is not necessary for federal jurisdiction that McKesson establish that all of Plaintiffs' counts against it raise a federal question. Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiffs' remaining counts against Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

suspicious." SAC ¶ 298. Thus, Plaintiffs' causes of action "necessarily turn[] on some construction of federal law." *Alcoa Power Generating, Inc.*, 853 F.3d at 146.

44.     In sum, the Complaint necessarily raises federal issues — namely, whether Distributor Defendants violated the CSA by failing to prevent or halt suspicious orders for prescription opioids, and whether compliance with production quotas set by DEA under the CSA was unreasonable.

45.     *Second*, these federal issues are "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiffs plead them, arise only under the CSA. Indeed, these federal issues are the "central point of dispute." *Gunn*, 568 U.S. at 259.

46.     *Third*, the federal issues presented by Plaintiffs' claims are "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 253. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (internal quotation and citation omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

47.     Plaintiffs' theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. Indeed,

Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72 (emphasis added).

48.     Plaintiffs' theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to 'the federal system as a whole,'" *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction").

49.     Plaintiffs' attempt to enforce the CSA raises substantial federal questions even though the CSA does not provide for a private right of action. In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction.

The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

50.    Removal is particularly appropriate here because Plaintiffs' action is but one of more than 1,900 opioid-related actions pending in the MDL in the Northern District of Ohio. Indeed, Plaintiffs acknowledge that opioid use and addiction is not merely a local issue, but a "national epidemic." SAC ¶ 512. The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[6]

51.    *Fourth*, and finally, the federal issues also are capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA — the DEA — applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

52.    In summary, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal

---

[6] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

4829-8060-5078
-8060-50

forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

53.     To the extent that the Court determines that some, but not all, of Plaintiffs' claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.     OTHER REMOVAL ISSUES

54.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served in this action join in or consent to this removal.

55.     The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below: Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Teva Pharmaceuticals USA, Inc.; Mallinckrodt LLC; Walgreens Boots Alliance, Inc.; Walgreen Co.; Rite Aid Corporation; Rite Aid Hdqtrs. Corp.; Rite Aid of Tennessee, Inc.; CVS Health Corporation; CVS Pharmacy, Inc.; CaremarkPCS Health, L.L.C; AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Cardinal Health Pharmacy Services, LLC; Cardinal Health Specialty Pharmacy, LLC; Mark Murphy; North Alabama Pain Services, LLC; Montclair Health & Wellness LLC c/b/a Specialty Associates.

56.     The following Defendants have not been properly served, and thus their consent to removal is not required: Richard Sackler.

57.     Upon information and belief, Defendant Lynnville Family Medical Clinic, LLC has permanently closed, no longer has any registered agent, and has failed to file its annual report with the Tennessee Secretary of State.  Indeed, although this action was filed in January 2018, this defendant has not appeared or participated in this action in any respect.  Counsel for McKesson has made diligent efforts to locate a representative of this defendant, including identifying and attempting numerous times to contact a purported former employee.  Despite these efforts, counsel for McKesson has been unable to contact anyone associated with this defendant.  Because Defendant Lynnville Family Medical Clinic, LLC is a defunct business entity, it is a nominal defendant and its consent to removal is not required.  *See Wellgen Standard, LLC v. Maximum Legal Holdings, LLC*, 2019 WL 1043395, at *2 (M.D. Tenn. Mar. 5, 2019) ("The term ['nominal party'] has specifically been held to include defunct business entities."); *see also Beasley v. Wells Fargo Bank, N.A.*, 2017 WL 2670892, at *3 (M.D. Tenn.

4829-8060-5078
-8060-50

21

June 21, 2017) ("[N]ominal parties are excepted from the requirement that all defendants join in or consent to removal to federal court."). The state court docket likewise does not reflect service of the SAC on this defendant. For that additional reason, its consent to removal is not required.

58. Defendant Center for Advanced Medicine, LLC has been administratively dissolved and considered inactive by the Tennessee Secretary of State as of August 8, 2015. Upon information and belief, the Center for Advanced Medicine, LLC is permanently closed. Counsel for McKesson has made diligent efforts to locate a representative of this defendant, but has been unable to do so. Indeed, although this action was filed in January 2018, this defendant has not appeared or participated in this action in any respect. Because Defendant Center for Advanced Medicine, LLC is a defunct business entity, it is a nominal defendant and its consent to removal is not required. *See Wellgen Standard*, 2019 WL 1043395, at *2. Counsel for McKesson has contacted counsel for Defendant David Florence, the former owner of Defendant Center for Advanced Medicine, LLC, who represents that Center for Advanced Medicine, LLC no longer has a registered agent, and has not been properly served. The state court docket likewise does not reflect service of the SAC on this defendant. For that additional reason, its consent to removal is not required.

59. The state court docket does not reflect service of the SAC on Defendant Nathan Paul Haskins. Counsel for McKesson has made diligent efforts to locate and contact this defendant. Although counsel for McKesson was able to reach Mr. Haskins by telephone and e-mail, Mr. Haskins denied any knowledge of this action before abruptly ending the phone call. Counsel for McKesson made several additional attempts to contact Mr. Haskins, but have been unable to. Based on Mr. Haskin's denial of any knowledge of this action, he appears to never

have been properly served.  The state court docket likewise does not reflect service of the SAC on this defendant.  Accordingly, his consent to removal is not required.

60.     Upon information and belief, Defendant David Florence has also not been served. Counsel for McKesson was able to reach Mr. Florence by telephone.  He denied knowing about the state court action, and then ended the call.  Counsel for McKesson then identified, and contacted counsel for Mr. Florence in another matter.  Those attorneys confirmed that they represented Mr. Florence in that separate matter, were aware of the existence of the state court action, but stated they did not believe that Mr. Florence had been served the SAC.   Although Mr. Florence was served with the original complaint on February 6, 2018, there is no record of Mr. Florence having been served the SAC.   Indeed, Mr. Florence has not appeared or participated in this action in any respect.  As such,  consent to removal by Mr. Florence is not required.

61.     By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to them, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

62.     If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

63.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiffs. McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson  removes  this  action,  pending  in  the  Circuit  Court  for

Cumberland County at Crossville, Tennessee, Docket No. CC1-2018-CV-6347, to this Court.

Respectfully submitted,

| May 3, 2019 | s/John-David H. Thomas |
| | John-David H. Thomas (TN BPR No. 027582) |
| | Robert D. Boon (TN BPR No. 033217) |
| | WALLER LANSDEN DORTCH & DAVIS, LLP |
| | Nashville City Center |
| | 511 Union Street, Suite 2700 |
| | Nashville, Tennessee 37219 |
| | Telephone: (615) 244-6380 |
| | Facsimile: (615) 244-6804 |
| | Email: jd.thomas@wallerlaw.com |
| | jaz.boon@wallerlaw.com |
| | |
| | Jeffrey C. Smith (TN BPR No. 016295) |
| | WALLER LANSDEN DORTCH & DAVIS, LLP |
| | 1715 Aaron Brenner Drive, Suite 300 |
| | Memphis, Tennessee 38120 |
| | Telephone: (901) 288-1700 |
| | Facsimile: (901) 288-1706 |
| | Email: jeff.smith@wallerlaw.com |
| | |
| | *Attorneys for McKesson Corporation* |

| | **CONSENT OF OTHER DEFENDANTS:** |
| --- | --- |
| | */s/ James G. Thomas*<br>Mark S. Cheffo*<br>Hayden A. Coleman*<br>DECHERT LLP<br>Three Bryant Park<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Tel: (212) 698-3500<br>Fax: (212) 698-3599<br>Mark.Cheffo@dechert.com<br>Hayden.Coleman@dechert.com<br><br>*\* denotes national counsel who will seek pro hac vice admission*<br><br>James G. Thomas<br>William J. Harbison II<br>NEAL & HARWELL<br>1201 Demonbreun Street, Suite 1000<br>Nashville, TN 37213<br>(615) 244-1713<br>jthomas@nealharwell.com<br>jharbison@nealharwell.com<br><br>*\* denotes national counsel who will seek pro hac vice admission*<br><br>*Attorneys for Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company Inc.* |

_/s/ Tim Warnock_
Tim Warnock (TN Bar No. 012844)
Stuart Burkhalter (TN Bar No. 029078)
RILEY WARNOCK & JACOBSON, PLC
1906 West End Ave.
Nashville, TN 37203
(615) 320-3700
twarnock@rwjplc.com
sburkhalter@rwjplc.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
steven.reed@morganlewis.com

Tinos Diamantatos*
Megan R. Braden*
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
(312) 324-1145
tinos.diamantatos@morganlewis.com
megan.braden@morganlewis.com

_*Denotes national counsel who will seek pro hac vice admission_

_Attorneys for Teva Pharmaceuticals USA, Inc._

.

|  | */s/ Brien T. O'Connor* |
|---|---|
|  | Brien T. O'Connor* |
|  | Andrew J. O'Connor* |
|  | ROPES & GRAY LLP |
|  | 800 Boylston Street |
|  | Boston, MA 02199 |
|  | Email: brien.o'connor@ropesgray.com |
|  | Email: andrew.o'connor@ropesgray.com |
|  |  |
|  | *\* denotes national counsel who will seek pro hac vice admission* |
|  |  |
|  | *Attorneys for Mallinckrodt LLC* |
|  | */s/ Ronald S. Range, Jr.* |
|  | Ronald S. Range, Jr. (TN Bar No. 013928) |
|  | BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC |
|  | 100 Med Tech Parkway, Suite 200 |
|  | Johnson City, TN  37604 |
|  | (423) 975-7602 |
|  | rrange@bakerdonelson.com |
|  |  |
|  | Ingo W. Sprie, Jr. |
|  | ARNOLD & PORTER KAYE SCHOLER LLP |
|  | 250 West 55th Street |
|  | New York, NY  10019 |
|  | (212) 836-8000 |
|  | Ingo.Sprie@arnoldporter.com |
|  |  |
|  | *Attorney for Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.* |

|  | /s/ Lela M. Hollabaugh |
|--|---|
|  | Lela M. Hollabaugh (TN BPR#14894) |
|  | Bradley Arant Boult Cummings LLP |
|  | 1600 Division Street, Suite 700 |
|  | Nashville, TN  37203 |
|  | Telephone: 615.252.2348 |
|  | Facsimile: 615.252.6348 |
|  | lhollabaugh@bradley.com |
|  |  |
|  | *Attorney for Cardinal Health, Inc.; Cardinal Health Pharmacy Services, LLC; Cardinal Health Specialty Pharmacy, LLC[7]* |
|  | /s/ Michael J. Salimbene |
|  | Michael J. Salimbene (PA Bar # 209664) |
|  | Reed Smith LLP |
|  | Three Logan Square |
|  | 1717 Arch Street, Suite 3100 |
|  | Philadelphia, PA 19103 |
|  | (215) 851-8100 |
|  | msalimbene@reedsmith@cov.com |
|  | (Not licensed in TN) |
|  |  |
|  | *Attorney for AmerisourceBergen Drug Corporation* |

---

[7] By consenting to this Notice of Removal, Cardinal Health Pharmacy Services, LLC and Cardinal Health Specialty Pharmacy, LLC do not concede that they are properly named or that they are proper parties to this lawsuit.

4829-8060-5078
-8060-50

|  | /s/ Nathan Bicks |
|  | Nathan Bicks |
|  | Ryan G. Saharovich |
|  | Burch, Porter & Johnson, PLLC |
|  | 130 North Court Avenue |
|  | Memphis, TN  38103 |
|  | (901) 524-5000 |
|  | nbicks@bpjlaw.com |
|  | rsaharovich@bpjlaw.com |
|  |  |
|  | Conor B. O'Croinin |
|  | (will seek admission pro hac vice) |
|  | Zuckerman Spaeder LLP |
|  | 100 East Pratt Street, Suite 2440 |
|  | Baltimore, Maryland |
|  | cocroinin@zuckerman.com |
|  |  |
|  | *Attorneys for CVS Pharmacy, Inc.; CVS Health Corporation; and CaremarkPCS Health, L.L.C.* |

|  | */s/ Larry Montgomery*<br>Larry Montgomery<br>Jeremy G. Albert<br>Glankler Brown<br>6000 Poplar Avenue, Suite 400<br>Memphis, TN 38119<br>(901) 525-1322<br><br>Kaspar Stoffelmayr*<br>Bartlit Beck LLP<br>54 West Hubbard Street<br>Chicago, IL 60654<br>(312) 494-4400<br><br>Lester C. Houtz*<br>Alex Harris*<br>Bartlit Beck LLP<br>1801 Wewatta Street, 12th Floor<br>Denver, CO 80202<br>(303) 592-3100<br><br>*\* denotes National Counsel who will seek pro hac vice admission*<br><br>*Attorneys for Defendants Walgreens Boots Alliance, Inc. and Walgreen Co* |
|---|---|

4829-8060-5078
-8060-50

*/s/ Larry Montgomery*

Larry Montgomery
Jeremy G. Albert
Glankler Brown
6000 Poplar Avenue, Suite 400
Memphis, TN 38119
(901) 525-1322
E-Mail: lmontgomery@glankler.com
E-Mail: jalpert@glankler.com

Coleen M. Meehan*
Elisa P. McEnroe*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
Email: coleen.meehan@morganlewis.com
Email: elisa.mcenroe@morganlewis.com

Kelly A. Moore*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6000
Email: kelly.moore@morganlewis.com
* denotes National Counsel who will
seek pro hac vice admission

*Attorneys for Defendants Rite Aid Corporation,
Rite Aid Hdqtrs. Corp. and Rite Aid of Tennessee,
Inc.*

4

| | |
|---|---|
| | */s/ Edward M. Yarbrough*<br>Edward M. Yarbrough (TN BPR # 004097)<br>W. Justin Adams (TN BPR #0022433)<br>BONE MCALLESTER NORTON PLLC<br>511 Union Street, Suite 1600<br>Nashville, Tennessee 37219<br>Telephone 615-238-6300<br>Facsimile 615-238-6301<br>eyarbrough@bonelaw.com<br>wjadams@bonelaw.com<br><br>*Attorney for Mark Murphy and North Alabama Pain Services, LLC* |
| | s/Daniel J. Murphy<br>Daniel J. Murphy (TN BPR # 033887)<br>Daniel J. Murphy Attorney at Law<br>1337 Antioch Pike<br>Nashville, TN 37211<br>Tennessee Bar No. 033887<br>Telephone: 931-422-8304<br>Facsimile: 615-523-1254<br>danielmurphy@danmurph.com<br><br>*Attorney for Montclair Health & Wellness LLC c/b/a Specialty Associates* |

4829-8060-5078<br>-8060-50

32

Case 2:19-cv-00038   Document 1   Filed 05/03/19   Page 32 of 32 PageID #: 32